# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRACY WILLIAMS** | § | **PLAINTIFF** |
| | § | |
| v. | § | Civil No. 1:17cv296-HSO-JCG |
| | § | |
| **SAFEWAY INSURANCE COMPANY** | § | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SAFEWAY INSURANCE COMPANY'S MOTION [39] FOR SUMMARY JUDGMENT

BEFORE THE COURT is Defendant Safeway Insurance Company's Motion [39] for Summary Judgment. Plaintiff Tracy Williams alleges Defendant wrongfully and in bad faith withheld benefits owed to Plaintiff under his insurance contract with Safeway Insurance Company. After consideration of the record, Defendant's Motion, and relevant legal authority, the Court is of the opinion that Defendant's Motion [39] for Summary Judgment should be denied insofar as it argues that Plaintiff failed to give timely notice of his uninsured motorist claim and obtain consent to settle as required by his policy. Defendant's Motion should be granted with respect to Plaintiff's bad faith claim.

## I. BACKGROUND

A. <u>Factual background</u>[1]

As he was driving east on Three Rivers Road in Gulfport, Mississippi, on May

---

[1] All facts and inferences are presented in the light most favorable to Plaintiff, the nonmoving party. *See RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

20, 2016, Plaintiff Tracy Williams ("Plaintiff") was involved in a motor vehicle accident. Compl. [1-2] at 2. Jessica L. Ramirez ("Ramirez") was traveling north on Highway 605 in Gulfport and struck the vehicle driven by Plaintiff. *Id.* Plaintiff alleges that he suffered permanent knee damage as a result of the accident. Aff. of Kathleen May [39-1] at 4. Ramirez was found to be at fault for the accident based upon her failure to yield the right of way. *Id.* USA Insurance Company ("USA") insured Ramirez's vehicle with policy limits of $25,000.00. *Id.* It tendered the $25,000.00 limit to Plaintiff to cover his expenses arising from his injuries sustained in the accident, but this amount was allegedly insufficient. *Id.* Plaintiff claims that medical expenses were $17,286.97 as of January 25, 2017. Aff. of Kathleen May [39-1] at 4. Adding this amount to his claims for present and future pain and suffering, future medical expenses, and accelerated degenerative process, Plaintiff estimates he was entitled to receive approximately $160,000.00. *Id.*

Plaintiff was insured by Defendant Safeway Insurance Company ("Defendant") under the policy number 2522455-MS-PP-001 ("Policy"), *id.* at 3, which provided for $75,000.00 in uninsured motorist coverage, Mem. in Opp'n [58] at 2. The Policy defined an uninsured motorist to include an under-insured driver. Policy [57-3] at 6-7. Despite a demand from Plaintiff, to date Defendant has not tendered these coverage benefits to Plaintiff. Compl. [1-2] at 3.

Defendant first received notice of the accident on October 31, 2016, Mem. in Opp'n [58] at 2, when it was contacted by a treatment provider who sought to make a claim under the Policy, Mem. in Supp. [40] at 2. Defendant contacted Plaintiff

and he advised that he did not wish to open a claim or provide any additional information. *Id.* Defendant then sent Plaintiff a "Reservation of Rights" letter. *Id.* On November 7, 2016, Defendant became aware that USA had accepted liability on behalf of Ramirez and that her policy limit was $25,000.00. Mem. in Opp'n [58] at 2-3. It also became aware that Plaintiff may have a possible uninsured motorist claim. *Id.* at 3.

Defendant received a written demand to open an uninsured motorist claim from Plaintiff's then-counsel, Shantrell Nicks ("Nicks"), on January 26, 2017. *Id.* Nicks spoke with one of Defendant's insurance adjusters, Richard Henley ("Henley"), sometime later in January 2017. *Id.* In a sworn deposition, Nicks has testified that she advised Henley that USA had offered to settle Plaintiff's claim for the policy limits of $25,000.00. *Id.* Nicks also stated that, upon being informed of this offer, Henley orally consented to the settlement on behalf of Defendant and agreed to begin evaluating Plaintiff's uninsured motorist claim. *Id.* at 4. Henley did not record this conversation in the claim notes. *Id.*

Defendant subsequently sent Plaintiff a letter requesting additional information and stating in part: "the above requests should in no way be construed as an intention for us to waive our subrogation rights." Mem. in Supp. [40] at 3. Defendant renewed this request, including the same language, on February 3, 2017. *Id.* Plaintiff provided some of the required documentation, and Defendant sent a third request for the remaining information on February 22, 2017, containing the same subrogation language. *Id.*

On January 27, 2017, USA advised Defendant that it had tendered policy limits of $25,000.00 to Plaintiff as a settlement of his claim against Ramirez. Mem. in Opp'n [58] at 5. Defendant received a copy of the settlement check and declarations page from USA on February 22, 2017, *id.*, and opened an uninsured motorist claim on March 13, 2017, *id.* When Defendant contacted USA on April 6, 2017, it learned that USA had not yet received the executed release from Plaintiff. *Id.* at 6. Defendant received a copy of the executed release from USA on April 17, 2017, *id.*, which indicated that Plaintiff had waived Defendant's subrogation rights, Mem. in Supp. [40] at 3.

Defendant conducted an asset check on Ramirez on April 25, 2017, which showed that she owned a home and two cars. Mem. in Opp'n [58] at 7. The asset check indicated that the home had approximately $2,000 worth of equity and the two vehicles were of nominal value. *Id.* Defendant then issued Plaintiff a letter denying the uninsured motorist claim, *id.* at 8, based upon Plaintiff's failure to obtain Defendant's prior consent to settle and given Ramirez's assets, Mem. in Supp. [40] at 3. Plaintiff insists that he had obtained consent from Defendant prior to settling, and that for Defendant to withhold consent was arbitrary based on the limited value of the home and cars. Mem. in Opp'n [58] at 9.

B. <u>Procedural history</u>

Plaintiff filed suit on September 14, 2017, in the County Court of Harrison County, Mississippi, First Judicial District. Compl. [1-2] at 1. The Complaint asserted causes of action for an underinsured motorist claim and a bad faith failure

to pay benefits. *Id.* at 3. Defendant removed the case to this Court based on diversity of citizenship. Notice of Removal [1] at 1. Defendant subsequently filed the present Motion [39] for Summary Judgment, arguing that Plaintiff did not report the accident within the time required by his Policy and that, by failing to obtain Defendant's consent to settle his liability claim against Ramirez, his uninsured motorist claim is excluded from coverage under the terms of the Policy. M. for Summ. J. [39] at 1.

Alternatively, Defendant contends that it had a legitimate basis to deny coverage and therefore, partial summary judgment is warranted as to the claims for bad faith, extra-contractual damages, and punitive damages. *Id.* at 1-2. Plaintiff's Response [57] in Opposition claims that there is a dispute as to whether Defendant consented to the settlement, such that summary judgment is not warranted, or in the alternative, that the delay in rendering a coverage decision waived Defendant's right to consent and subrogation. Resp. in Opp'n [57] at 2-3. Further, Plaintiff argues that because Defendant consented to settle, any subsequent denial of coverage based on a failure to obtain consent was made in bad faith. *Id.* at 3.

## II. DISCUSSION

A. Summary judgment standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that

there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp.*, 612 F.3d at 858.

B. <u>Uninsured motorist claim</u>

Defendant contends that Plaintiff failed to satisfy the conditions precedent to coverage on his Policy such that he is excluded from coverage. M. for Summ. J. [39] at 1. Specifically, he allegedly failed to notify Defendant of his accident within the required time, and he failed to obtain Defendant's consent before settling the underlying claim against Ramirez. Mem. in Supp. [40] at 5.

1. <u>Alleged failure to notify</u>

Defendant argues that Plaintiff did not provide timely notice of the accident

as required by the Policy.  Mem. in Supp. [40] at 6.  Plaintiff's Policy on uninsured motorist coverage provides that:

> We must also be notified within thirty (30) days after any covered person has determined that the other motor vehicle is uninsured and/or its identity is unascertainable and the intent of the covered person is to file a claim under the uninsured motorist coverage. Failure to give such notice will render this coverage void.

Policy [57-3] at 7.

The Mississippi Supreme Court has noted the importance of notice provisions in insurance policies:

> Notice confers valuable rights upon the insurer.  Timely notice protects the insurer's right to investigate the events underlying the claim and allows the insurer to make decisions regarding the defense of that claim.

*Jackson v. State Farm Mut. Auto. Ins. Co.*, 880 So. 2d 336, 343 (Miss. 2004) (citations omitted).  An insured's failure to give notice within the required time may be waived by the insurer where it does some act inconsistent with its claim that the policy has been rendered inoperative through failure to furnish timely notice. *Harris v. Am. Motorist Ins. Co.*, 126 So. 2d 870, 875 (Miss. 1961).  Mere silence on the part of the insurer is insufficient to constitute a waiver, but acts on the part of the insurer inconsistent with a notice defense may include:

> receiving, retaining and acting upon the notices furnished without objecting thereto; demanding further information, or additional proofs; refusing to furnish blanks required; or requiring the insured to do some act or incur some expense, or trouble, inconsistent with the claim of forfeiture such as treating an agent as having authority to receive proof; or by a denial of liability on other grounds.

*Id.*

Defendant argues that Plaintiff did not provide timely notice, presumably because the accident occurred on May 20, 2016, and Defendant did not receive any notice until October 31, 2016. Mem. in Supp. [40] at 6. When Defendant contacted Plaintiff in October 2016, he advised that he did not wish to open a claim. *Id.* It is unclear from the record exactly when, but sometime after October 31, 2016, Plaintiff decided he did wish to open an uninsured motorist claim, and he notified Defendant on January 26, 2017, of his intent to file one. Mem. in Opp'n [58] at 3.

Even assuming Plaintiff notified Defendant of the accident after the time required by the Policy had expired, Defendant requested further information and action from Plaintiff. Aff. of Kathleen May [39-1] at 5-7. Defendant sent a letter to Plaintiff on January 26, 2017, requesting:

> 1. A written or verbal statement from Tracy Williams confirming the loss facts.
> 2. A copy of the declaration page for the claimant and/or driver.
> 3. A letter from USA Insurance conforming their offer of policy limits
> 4. A copy of the declaration page from Progressive[2] for the 2012 Chevrolet Malibu, which is owned by Modesty Howze.

*Id.* at 5. This letter also referred to items required under Plaintiff's Policy to file an uninsured motorist claim, such as a copy of the police report and a complete copy of the itemized bills, medical notes, and medical reports related to the loss. *Id.* Defendant sent another letter on February 3, 2017, requesting the same information. *Id.* at 6. A final request was sent on February 22, 2017, asking Plaintiff to send "[a] copy of the declaration page from Progressive for the 2012

---

[2] There was an additional insurer involved in this dispute, but that fact has no bearing on the outcome here.

Chevrolet Malibu, which is owned by Modesty Howze." *Id.* at 7.

Thus, on three occasions, Defendant requested information from Plaintiff, *id.* at 5-7, and when Defendant denied liability, it made its determination solely on the basis that Plaintiff settled without obtaining prior consent and on the fact that Ramirez had assets, *id.* at 11-12. By these actions, a fact question is presented whether Defendant acted inconsistently with its assertion that the Policy was inoperative due to Plaintiff's failure to furnish notice within the time required. These inconsistent actions arguably waived Plaintiff's alleged failure to comply with the notice requirements. Summary judgment on this basis would be inappropriate.

2.  <u>Alleged failure to obtain consent</u>

Defendant also argues that Plaintiff has not shown that it consented to the settlement. The consent provision in the Policy states that:

> 1. We do not provide Uninsured Motorists Coverage for bodily injury and/or property damage sustained by any person:
>     a. If that person or the legal representative settles the bodily injury and/or property damage claim without our consent.

Policy [57-3] at 7.

Defendant relies on redacted telephone records[3] and the claim notes to support its position. Reply [62] at 2. According to Defendant, neither of these reveal any evidence that Nicks contacted Henley in January 2017. *Id.* Defendant's

---

[3] Defendant notes that the telephone records were produced to Plaintiff's counsel in discovery and counsel was asked to advise if there were any other telephone numbers Nicks could have used to communicate with Henley. Reply [62] at 2. Plaintiff's counsel acknowledged receipt of the records on May 1, 2019, and had not responded further at the time Defendant filed its Reply [62] on May 30, 2019. *Id.*

claims manager agreed, however, that sometimes not everything that happens in connection with a claim gets documented in the claim notes. Dep. of Kathleen May [57-2] at 15. Nicks has submitted sworn deposition testimony that she did receive verbal consent to settle the claim. Mem. in Opp'n [58] at 12. The Policy does not require written consent. *See* Policy [57-3] at 7.

Defendant argues that Plaintiff has not satisfied his burden by responding to Defendant's Motion with "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92, 98 (5th Cir. 1994), or with only a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), Reply [62] at 1-2. However, in the Court's view, Plaintiff has done more than the plaintiffs offered in both *Hopper* or *Davis* by offering Nicks's sworn deposition testimony.

In *Hopper*, the plaintiffs offered general, nonspecific affidavits in response to competing affidavits and circumstantial evidence. *Hopper*, 16 F.3d at 98. Conversely, Nicks's testimony provides details such as the timing of the call to Henley and its contents. Dep. of Shantrell Nicks [57-4] at 4. This was not a bare recitation of the fact that Plaintiff had received consent, but a specific description of how consent was obtained. Plaintiff's use of Nicks's deposition is specific enough to constitute more than an "unsubstantiated assertion" and to create a genuine dispute of material fact about whether consent was obtained from Defendant in January 2017.

In *Davis*, there was a sufficient showing that an interviewer had asked a single gender discriminatory question. *Davis*, 14 F.3d at 1086. The court

determined that this evidence was insufficient to create a genuine dispute of material fact as to whether the hiring decision was made for discriminatory reasons when a team of seven employees decided for a gender-neutral reason not to hire the plaintiff. *Id.* at 1086-87. In other words, in *Davis*, even if the conduct alleged had occurred, the result would have been the same. *Id.* The circumstances in this case are wholly different. If Plaintiff's allegation is found to be true, and Defendant did give consent to settle in January 2017, Plaintiff has shown the existence of a genuine dispute of material fact for resolution at trial on the question of whether Defendant consented to the settlement.[4]

C. <u>Bad faith claim</u>

When an insurance policy grants discretion to an insurance company, that discretion must be exercised reasonably. *U.S. Fid. & Guar. Co. v. Knight*, 882 So. 2d 85, 92 (Miss. 2004). A bad faith claim requires a "determination of whether the insurer denied the underlying policy or contract claim on an arguable basis." *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172, 1183-84 (Miss. 1990). Like the denial of a claim, an insurer must also articulate an arguable basis for its refusal to consent to a settlement. *Knight*, 882 So. 2d at 93. If an insurer has a legitimate or arguable basis for doing so, punitive damages will not lie. *Andrew Jackson Life Ins. Co.*, 566 So. 2d at 1183-84. Arguably-based denials are defined as those which were rendered upon dealing with the disputed claim fairly and in good

---

[4] Because Plaintiff has shown the existence of a genuine dispute of material fact on the issue of consent, the Court need not address his alternative argument that summary judgment should be denied because Defendant waived its rights to consent and subrogation due to delay.

faith. *Id.* at 1184. Whether the insurer rendered its denial fairly and in good faith is to be determined by the Court. *Id.* If the Court is unable to make the determination, then logic dictates that the insurer's denial of the claim was not reached in bad faith. *Id.* Further, an arguable basis for withholding consent to settle has been found when the other party to a settlement had some limited-value assets and held a job. *Knight*, 882 So. 2d at 88.

Defendant contends that, although it did deny Plaintiff's claim, it had an arguable basis for doing so because Plaintiff settled his liability claims with Ramirez before obtaining Defendant's consent and without protecting its subrogation rights. Mem. in Supp. [40] at 7. Plaintiff responds that Defendant had no arguable basis to deny the claim because it had consented to settle in January 2017 and its later withdrawal of consent in April 2017 constituted bad faith. Mem. in Opp'n [58] at 18.

Defendant did not have documentation, such as claim notes, supporting the assertion that its employee, Henley, had consented to a settlement.[5] It has been noted that "in the great majority of cases, where the insured is not entitled to a directed verdict on his underlying contract claim, it follows that the bad faith punitive damages issue should not be submitted to the jury." *S. United Life Ins. Co. v. Caves*, 481 So. 2d 764, 769 (Miss. 1985). Because there is a dispute as to whether Plaintiff obtained consent to settle, there was likewise an arguable basis to deny

---

[5] Plaintiff's uninsured motorist claim was reassigned after it was opened in March 2017 and there is nothing in the record indicating whether Henley recalled the disputed conversation with Nicks. Mem. in Opp'n [58] at 6.

Plaintiff's claim based on a lack of consent. *Id.*

The Court also notes that, if consent to settle was denied due to Ramirez's assets, this also constituted an arguable basis for denial. As with the settling party in *Knight*, Ramirez had at least some assets, specifically a home and two cars. Even if these assets were of limited or nominal value, this has been found to constitute an arguable basis to withhold consent to settle. *Knight*, 882 So. 2d at 93.

Because Defendant had an arguable basis for withholding its consent to settle and for denying Plaintiff's claim, partial summary judgment is warranted on Plaintiff's bad faith claim.

### III. CONCLUSION

Because Plaintiff has shown the existence of a question of material fact for resolution at trial regarding his uninsured motorist claim, summary judgment should be denied. However, partial summary judgment should be granted on Plaintiff's bad faith claim. To the extent the Court has not specifically addressed any of the parties' arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Safeway Insurance Company's Motion [39] for Summary Judgment is **GRANTED IN PART**, insofar as it seeks dismissal of the claim for bad faith. Defendant Safeway Insurance Company's Motion [39] for Summary Judgment is **DENIED IN PART**, insofar as it requests dismissal of the uninsured motorist claim.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff Tracy

Williams's bad faith claim is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 27th day of September, 2019.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE